| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, STATE OF COLORADO<br><br>Court Address:<br>1437 Bannock Street, Room 256<br>Denver, Colorado 80202<br>(720) 865-8301 | DATE FILED<br>January 30, 2026 2:45 PM<br>FILING ID: AE7D4050664D4<br>CASE NUMBER: 2026CV30362<br><br>▲COURT USE ONLY▲ |
| Plaintiff:  **VALERIA ZANETTI,**<br><br>v.<br><br>Defendants: **SUNBEAM PRODUCTS, INC., D/B/A SUNBEAM-OSTER COMPANY, INC., J. Does 1-5.** | Case No:<br><br>Div/Ctrm: |
| Brett N. Huff, Atty. No. 32071<br>Richard W. Leslie, Atty. No. 28721<br>Huff & Leslie, LLP<br>2480 Gray Street<br>Edgewater, Colorado 80214<br>Phone: 303-232-3622; Fax: 303-274-0638<br>bhuff@huffandleslie.com, rleslie@huffandleslie.com<br>*Attorneys for Plaintiff* | |
| **COMPLAINT** | |

Plaintiff, Valeria Zaneti, by and through her attorneys, Huff & Leslie, LLP, files this Complaint against the Defendants and states, alleges and avers as follows:

## PARTIES

1.    Plaintiff Valeria Zanetti (hereinafter referred to as "Ms. Zanetti" and/or "Plaintiff") resided in Jefferson County, State of Colorado, at all pertinent times herein.

2.    Defendant Sunbeam Products, Inc. d/b/a Sunbeam-Oster Company, Inc., (hereinafter "Sunbeam") is a foreign corporation with its principal office located at 2381

**EXHIBIT A**

Executive Center Drive, Boca Raton, FL 33431 and its registered agent, Corporation Service

Company, located at 1900 W. Littleton Boulevard, Littleton, CO 80120.

3.     J. Does 1 through 5 are persons or entities who designed, manufactured, and/or

sold the product that is the subject of this action and which caused injury to the Plaintiff.

## JURISDICTION AND VENUE

4.     The Court has subject matter jurisdiction over this action pursuant to the

Constitution of the State of Colorado, Article VI, Section 9.

5.     The Court has personal jurisdiction over Defendants by virtue of their

commission of tortious actions in Colorado that caused injury and damages in Colorado

to a Colorado resident, all pursuant to C.R.S. § 13-1-124(1)(b).

6.     Further, the Court has personal jurisdiction over Defendants by virtue of

their operations and presence in Colorado, their transacting business in or directed at

Colorado, their being at home in Colorado, and by otherwise purposefully availing

themselves of the benefits and privileges of Colorado law by regular, continuous, and

systematic contacts with Colorado.

7.     Defendants submitted to the jurisdiction of this Court by personally or through

their agents doing the following acts:

a.  Committing tortious acts within this state by selling and delivering

defective products to persons, firms or corporations in this state via

their distributors, dealers, wholesalers and brokers.  These defective

products were used by consumers in Colorado in the ordinary course

2

of commerce and trade;

b. Conducting and engaging in substantial business and other activities in Colorado by selling products to persons, firms or corporations in this state via their distributors, dealers, wholesalers and brokers. Such products were used by consumers in Colorado in the ordinary course of commerce and trade;

c. By their acts and omissions, causing injury to Plaintiff while in Colorado.

d. Engaging in solicitation activities in Colorado to promote sale, consumption, use, maintenance, and/or repair of their products; and

e. Selling products with knowledge or reason to foresee that these products would be shipped in interstate commerce and would reach the market of Colorado users or consumers.

8. Venue is proper in this Court, pursuant C.R.C.P. 98, when a defendant is non-resident of the State of Colorado, venue is proper where it is designated in the Complaint, and since multiple Defendants are non-residents, Plaintiff designates Denver County District Court as the as the place of trial.

9. This court has jurisdiction over all claims asserted herein because the amount in controversy exceeds $25,000.00.

## GENERAL ALLEGATIONS

10. Plaintiff incorporates the allegations contained in Paragraphs 1 through 9 of this Complaint as fully set forth herein.

11. This action arises from a serious burn incident wherein Plaintiff suffered

3

second and third-degree burns to her hand, requiring hospitalization in the burn ward and skin graft surgery.

12.     On or about November 12, 2018, Plaintiff purchased a model number TSSTTVFDXL, TSSTTVFDXL Oster French Door Countertop Oven (hereinafter "Subject Countertop Oven") at a Costco  retail store located at 6400 W 92nd., Avenue, Westminster, CO. **Exhibit 1.**

13.     Defendants designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Countertop Oven that caused injury to Plaintiff.

14.     The Subject Countertop Oven featured spring-loaded, French glass doors that were supposed to remain open, when opened, to allow consumers place food in the ovens and to reach in and remove food items when cooked, especially while the ovens were at high temperatures.

15.     On May 26, 2024, the Plaintiff used the Subject Countertop Oven to a meal.

16.     While using the Subject Countertop Oven, Plaintiff followed the manual associated with the Subject Countertop Oven.

17.     Plaintiff placed her meal in the Subject Countertop Oven pursuant to the manual instructions, turned it on and proceed to cook her meal.

18.     Plaintiff completely opened the French doors on Subject Countertop Oven, which remained open, and when she reached in the oven to pull out the tray that contained her food, the French doors unexpectedly snapped shut on her hand, severely burning her hand (hereinafter "the Incident").

19.     Shortly after the Incident, Plaintiff went for medical treatment to treat her serious burns to her hand.

20.     More specifically, Plaintiff suffered full thickness third degree burns to her hand.

21.     The medical treatment received by Plaintiff was significant, excruciating, and traumatic; she quickly sought treatment and was later was admitted to the burn ward at UCHeath Medical Center, Anschutz Medical Campus, where she was treated for five days, received skin graft surgery, and other treatment for her burned hand.

22.     Plaintiff has suffered permanent scarring and disfigurement to her hand and arm.

23.     As a result of the burns to her hand, Plaintiff experience pain, numbness and tingling and a lack of sensation in her hand.

24.     Plaintiff suffered and continues to suffer from these symptoms, including, but not limited to, a constant sensitivity and nerve pain, which is a burning sensation, on her hand where it was burned.

25.     Aggravated with work

26.     During her treatment and recovery, Plaintiff missed time from work and later faced significant work restrictions.

## **THE RECALL**

27.     On or about September 25, 2025, Plaintiff received a Recall Notice from Sunbeam on the Subject Countertop Oven, stating, "When reaching into the oven, the

oven's doors can unexpectedly close, posing a burn hazard to consumers." **Exhibit 2.**

28.     It is indisputable that model number TSSTTVFDXL Countertop Ovens, including the one purchased by Plaintiff, are defective and dangerous.

29.     Indeed, on or about September 25, 2025, Defendants Sunbeam recalled more that 1.2 million of these types of Countertop Ovens.

30.     According to the Consumer Product Safety Commission (CPSC), as of September 25, 2025, Defendant Sunbeam had received at least 95 reports of the French doors unexpectantly closing and causing second degree burn injuries to consumers on their countertop ovens, including model number TSSTTVFDXL Countertop Ovens.

31.     The nature of the aforementioned defect is especially notable given that product

32.     Defendants were aware of defects associated with model number TSSTTVFDXL Countertop Ovens.

33.     Unfortunately for Plaintiff, Defendants did not nothing to protect purchasers of model number TSSTTVFDXL Countertop Ovens from this known defects and did not initiate the aforementioned recall until more than 95 people had been burned by these ovens.

34.     Despite direct knowledge that model number TSSTTVFDXL Countertop Ovens were defective and had been the cause of numerous injuries to unwitting consumers, Defendants failed to take the appropriate action to properly notify or warn consumers, including Plaintiff.

## **FIRST CLAIM FOR RELIEF**

**Product Liability- (Strict Liability: Design Defect)-Defendants**

35.    Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

36.    At all times relevant hereto, Defendants were engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and/or distributing consumer goods, including, but not limited to, Countertop Ovens.

37.    Defendants designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Countertop Oven that caused injury to Plaintiff.

38.    The Subject Countertop Oven was defective and unreasonably dangerous at the time it was designed, tested, maintained, assembled, sourced, imported, distributed, manufactured, inspected, sold, advertised, marketed, and placed into the stream of commerce by the Defendants in the following ways:

    a.  The Subject Countertop Oven was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases and/or uses it, with the ordinary knowledge common to the community as to its characteristics;

    b.  The Subject Countertop Oven was defectively designed in a manner that created an unreasonable propensity for it's doors to unexpectantly close during normal and foreseeable conditions;

    c.  The Subject Countertop Oven was defectively designed in that it fails to operate as marketed and advertised;

d.  The Subject Countertop Oven was defectively designed in that it lacks warnings, instructions, stickers, placards, and/or notices necessary to alert users regarding the hazardous conditions described herein;

e.  The Subject Countertop Oven was defectively designed in that the doors would not remain open to allow consumers to safely reach into the hot oven to retrieve their food.

39.  The Subject Countertop Oven had not been misused post-sale before it failed.

40.  The Subject Countertop Oven had not been modified post-sale before it failed.

41.  The Subject Countertop Oven was within its anticipated useful life when it failed.

42.  The Subject Countertop Oven failure was such that would not have occurred in the absence of a defect or unreasonably dangerous condition within it.

43.  As a direct, proximate, and foreseeable result of the Defendants' conduct, Plaintiff suffered serious burns requiring significant and costly past and future medical care, permanent disfigurement, permanent impairment, pain, suffering, disability, mental anguish, emotional distress, embarrassment, humiliation, loss of capacity for the enjoyment of life, lost income, and out of pocket expenses.

## SECOND CLAIM FOR RELIEF

### Product Liability - (Strict Liability: Manufacturing Defect)

44.  Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

45.    At all times relevant hereto, Defendants were engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and/or distributing consumer goods, including, but not limited to, Countertop ovens.

46.    Defendants designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Countertop Oven that caused injury to Plaintiff.

47.    The Subject Countertop Oven was defective and unreasonably dangerous at the time it was designed, tested, maintained, assembled, sourced, imported, distributed, manufactured, inspected, sold, advertised, marketed, and placed into the stream of commerce by the Defendants in the following ways:

> a. The Subject Countertop Oven was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases and/or uses it, with the ordinary knowledge common to the community as to its characteristics;
>
> b. The Subject Countertop Oven was defectively manufactured in a manner that created an unreasonable propensity for it to explode during normal and foreseeable conditions;
>
> c. The Subject Countertop Oven was defectively manufactured in that it failed to operate as marketed and advertised;
>
> d. The Subject Countertop Oven was defectively manufactured in that its materials and tolerances allow the doors to unexpectantly shut on

9

consumers hands.

48.     The Subject Countertop Oven was defectively manufactured in that it fails to operate in a manner an ordinary consumer would reasonably expect in light of its nature and intended function.

49.     The Subject Countertop Oven had not been misused post-sale before it failed.

50.     The Subject Countertop Oven had not been modified post-sale before it failed.

51.     The Subject Countertop Oven was within its anticipated useful life when it failed.

52.     The Subject Countertop Oven failure was such that would not have occurred in the absence of a defect or unreasonably dangerous condition within it.

53.     As a direct, proximate, and foreseeable result of the Defendants' conduct, Plaintiff suffered serious burns requiring significant and costly past and future medical care, permanent disfigurement, permanent impairment, pam, suffering, disability, mental anguish, emotional distress, embarrassment, humiliation, loss of capacity for the enjoyment of life, lost income, and out of pocket expenses.

### THIRD CLAIM FOR RELIEF

**Product Liability- (Strict Liability: Failure to Warn**

54.     Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

55.     At all times relevant hereto, Defendants were engaged in the business of

designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and/or distributing consumer goods, including, but not limited to, countertop ovens.

56.    Defendants designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Countertop Oven that caused injury to Plaintiff.

57.    The Subject Countertop Oven was defective and unreasonably dangerous at the time it was designed, tested, maintained, assembled, sourced, imported, distributed, manufactured, inspected, sold, advertised, marketed, and placed into the stream of commerce by the Defendants in the following ways:

    a.  The Subject Countertop Oven was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases and/or uses it, with the ordinary knowledge common to the community as to its characteristics;

    b.  The Subject Countertop Oven was designed, manufactured, distributed, marketed, sold and/or supplied in an unsafe, unreasonably dangerous, and defective condition that had an unreasonable propensity for its doors to unexpectantly shut during normal and foreseeable conditions;

    c.  The Subject Countertop Oven fails to operate as marketed and advertised;

    d.  The Subject Countertop Oven and its associated manual and marketing materials fail to alert users to the hazardous conditions described herein;

    e.  The Subject Countertop Oven is defective due to the absence of warnings,

11

instructions, stickers, placards, notices, or other documentation to alert users regarding the hazardous conditions described herein;

f. The Subject Countertop Oven is defective due to inadequate warnings, instructions, stickers, placards, notices, or other documentation to alert users regarding the hazardous conditions described herein;

g. The Defendants failed to provide warnings of the aforementioned defects known or knowable in light of the prevailing scientific and technical knowledge;

58. The product manual associated with the Subject Countertop Oven states, "When baking [warming, broiling, toasting] is complete, open doors completely and remove food," implying it is the proper and safe way to remove food from the oven.

59. This statement is false when it implies it is safe to open the oven's doors completely and remove food as to provide consumers such as Plaintiff with a false sense of security despite the Subject Countertop Oven's dangerous and hazardous condition; and

60. At the time of the Incident on May 26, 2024, the Subject Countertop Oven failed to operate in a manner an ordinary consumer would reasonably expect in light of its nature and intended function.

61. The Subject Countertop Oven had not been misused post-sale before it failed.

62. The Subject Countertop Oven had not been modified post-sale before it failed.

63. The Subject Countertop Oven was within its anticipated useful life when it failed.

64.     The Subject Countertop Oven failure was such that would not have occurred in the absence of a defect or unreasonably dangerous condition within it.

65.     As a direct, proximate, and foreseeable result of the Defendants' conduct, Plaintiff suffered serious burns requiring significant and costly past and future medical care, permanent disfigurement, permanent impairment, pain, suffering, disability, mental anguish, emotional distress, embarrassment, humiliation, loss of capacity for the enjoyment of life, lost income, and out of pocket expenses.

## FOURTH CLAIM FOR RELIEF

### Product Liability- (Negligence)

66.     Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

67.     At all times relevant hereto, Defendants were engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and/or distributing consumer goods, including, but not limited to, countertop ovens.  Defendants designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Countertop Oven that caused injury to Plaintiff.

68.     As product manufacturers and sellers, Defendants owed a duty to Plaintiff and other consumers to properly design, test, maintain, assemble, source, import, manufacture, inspect, sell, advertise, market, and distribute the Subject Countertop Oven in a reasonably safe condition so as to prevent the unreasonable risk of injury to persons.

69.     Defendants breached the aforementioned duty by negligently designing,

13

testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and distributing the Subject Countertop Oven when it was not in a reasonably safe condition for foreseeable use, as follows:

    a.  The Subject Countertop Oven was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases and/or uses it, with the ordinary knowledge common to the community as to its characteristics;

    b.  The Subject Countertop Oven was designed, manufactured, distributed, marketed, sold and/or supplied in an unsafe, unreasonably dangerous, and defective condition that had an unreasonable propensity to explode during normal and foreseeable conditions;

    c.  The Subject Countertop Oven failed to operate as marketed and advertised;

    d.  The Subject Countertop Oven and its associated manual and marketing materials failed to alert users to the hazardous conditions described herein;

    e.  The Subject Countertop Oven was defective due to inadequate warnings or instructions, including warning stickers, placards, or other documentation to alert  users regarding the hazardous conditions described herein;

    f.  The Defendants failed to provide warnings of the aforementioned defects known or knowable in light of the prevailing scientific and technical knowledge;

14

g. The Defendants failed to warn consumers, including Plaintiff, that model number TSSTTVFDXL countertop ovens had caused 95 or more burn injuries;

70. The product manual associated with the Subject Countertop Oven states, "When baking [warming, broiling, toasting] is complete, open doors completely and remove food," implying it is the proper and safe way to remove food from the oven.

71. This statement is false when it implies it is safe to open the oven's doors completely and remove food as to provide consumers such as Plaintiff with a false sense of security despite the Subject Countertop Oven's dangerous and hazardous condition; and

72. At the time of the Incident on May 26, 2024, the Subject Countertop Oven failed to operate in a manner an ordinary consumer would reasonably expect in light of its nature and intended function.

73. As a direct, proximate, and foreseeable result of the Defendants' negligence, Plaintiff suffered serious burns requiring significant and costly past and future medical care, permanent disfigurement, permanent impairment, pain, suffering, disability, mental anguish, emotional distress, embarrassment, humiliation, loss of capacity for the enjoyment of life, lost income, and out of pocket expenses.

## FIFTH CLAIM FOR RELIEF

### Product Liability- (Breach of Implied Warranty)

74. Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

75. At all times relevant hereto, Defendants were engaged in the business of

designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and/or distributing consumer goods, including, but not limited to, countertop ovens.

76.    Defendants designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Countertop Oven that caused injury to Plaintiff.

77.    The Subject Countertop Oven was defective, unreasonably dangerous, and not of merchantable quality at the time it was introduced to the stream of commerce.

78.    As merchants in the business of selling countertop ovens, Defendants impliedly warranted that the Subject Countertop Oven would be suitable, merchantable, and fit for its ordinary and expected purpose.

79.    The Subject Countertop Oven was not suitable, merchantable, or fit for its ordinary and expected purpose at the time of its manufacture and sale.

80.    Plaintiff is a person who was reasonably expected to use or be affected by the Subject Countertop Oven.

81.    As a direct, proximate, and foreseeable result of the Defendants' breaches of implied warranties, Plaintiff suffered serious burns requiring significant and costly past and future medical care, permanent disfigurement, permanent impairment, pain, suffering, disability, mental anguish, emotional distress, embarrassment, humiliation, loss of capacity for the enjoyment of life, lost income, and out of pocket expenses.

## SIXTH CLAIM FOR RELIEF

### Breach of Express Warranty

82.     Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

83.     At all times relevant hereto, Defendants were engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and/or distributing consumer goods, including, but not limited to, countertop ovens.

84.     Defendants designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Countertop Oven that caused injury to Plaintiff.

85.     Defendants expressly warranted that the Subject Countertop Oven would be free from defects in material and workmanship.

86.     Plaintiff is a person who was reasonably expected to use or be affected by the Subject Countertop Oven.

87.     The Subject Countertop Oven was not as warranted by Defendants, as it was defective,  dangerous, unfit for its intended purpose, was not equipped with an airtight locking lid, was prone to causing explosions and burns, was not made with high quality materials, was not expected to last, and injured Plaintiff as described herein.

88.     As a direct, proximate, and foreseeable result of the Defendants' breaches of warranties, Plaintiff suffered serious burns requiring significant and costly past and future medical care, permanent disfigurement, permanent impairment, pain, suffering, disability,

17

mental anguish, emotional distress, embarrassment, humiliation, loss of capacity for the enjoyment of life, lost income, and out of pocket expenses.

## SEVENTH CLAIM FOR RELIEF

### Colorado Consumer Protection Act (C.R.S. § 6-1-101)

89.    Plaintiff incorporates and realleges, by reference, all other paragraphs in this Complaint as if fully set forth herein.

90.    At all times relevant hereto, Defendants were engaged in the business of designing, testing, maintaining, assembling, sourcing, importing, manufacturing, inspecting, selling, advertising, marketing, and/or distributing consumer goods, including, but not limited to, countertop Ovens.

91.    Defendants designed, tested, maintained, assembled, sourced, imported, manufactured, inspected, sold, advertised, marketed, and/or distributed the defective Subject Countertop Oven that caused injury to Plaintiff.

92.    The Defendants fraudulently, willfully, knowingly, intentionally, and in bad faith engaged in the following deceptive trade practices:

a.    Defendants sold and continued to sell defective and dangerous model number TSSTTVFDXL countertop ovens to unwitting consumers, including Plaintiff, despite  actual knowledge of dangerous defects;

b.    Defendants made false representations with respect to the characteristics, uses, and benefits of the model number TSSTTVFDXL countertop oven;

c.    Defendants made false representations that the model number TSSTTVFDXL countertop oven was of a particular standard, quality,

and/or grade when they knew or should have known that it was of another;

d. The Defendants failed to warn consumers, including Plaintiff, that model number TSSTTVFDXL countertop oven had caused nearly 100 burn injuries;

e. The Defendants concealed the fact that model number TSSTTVFDXL countertop ovens had caused 95 or more burn injuries;

f. Defendants made warranties of such a nature as to have the capacity and tendency of misleading purchasers or prospective purchasers into believing that the model number TSSTTVFDXL countertop oven had a greater degree of serviceability, durability, or performance capability in actual use than was true in fact;

g. Defendants failed to disclose material information concerning the defective and dangerous propensities of model number TSSTTVFDXL countertop ovens with the intent of inducing consumers into purchasing said products;

h. Defendants deliberately misled consumers and induced them to purchase model number TSSTTVFDXL countertop ovens despite direct knowledge of their defective and dangerous propensities; and

i. Defendants failed to conduct a reasonably prompt recall of model number TSSTTVFDXL countertop ovens despite direct knowledge of their defective and dangerous propensities.

93.     The aforementioned deceptive trade practices occurred in the course of Defendants' businesses.

94.     The aforementioned deceptive trade practices impacted the public as actual or potential consumers of the model number TSSTTVFDXL countertop ovens.

95.     As a direct, proximate, and foreseeable result of the Defendants' deceptive trade practices, Plaintiff suffered serious burns requiring significant and costly past and future medical care, permanent disfigurement, permanent impairment, pain, suffering, disability, mental anguish, emotional distress, embarrassment, humiliation, loss of capacity for the enjoyment of life, lost income, and out of pocket expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for Judgment against Defendants for relief as follows:

1. Economic damages, including but not limited to, past and future medical expenses, lost income, lost earning capacity, and out-of-pocket expenses;

2. Non-economic damages, including but not limited to, pain and suffering, loss of enjoyment of life, mental and emotional distress and anguish, inconvenience;

3. Damages for physical impairment and disfigurement;

4. All other compensatory damages caused by Defendants' actions and inactions, to be proven at trial;

5. Civil and statutory penalties;

6. Three times the amount of actual damages sustained, costs, and attorney fees as provided by C.R.S. § 6-1-113(2).

7. Pre-judgment and post-judgment interest as provided for by law;

8.      Attorney fees, costs, and expenses of this action as provided for by law; and

9.      For such other and further relief as the Court deems just and proper.

Dated this 30th day of January, 2026.

Respectfully submitted,

HUFF & LESLIE, LLP

*Original signature maintained at the offices of*
*Huff & Leslie, LLP*

*s/ Brett N. Huff*

_____

Brett N. Huff, Atty. Reg. No. 32071
Richard W. Leslie, Atty. No. 28721
Huff & Leslie, LLP
2480 Gray Street
Edgewater, CO  80214
Ph 303-232-3622; Fax 303-274-0638
bhuff@huffandleslie.com;
rleslie@huffandleslie.com
*Attorneys for Plaintiff*

21

```
16:27:29   11/09/25    Sales Audit - Transaction Detail    INP2709   PAGE   1


     Warehouse:    440
     Sales Date:  11/12/18          Reg#:    10    Trans Type:  Tender
           Time:   17:29           Tran#:   412    Tender:
     Total:       164.75        Operator:   111     Block:
Member #: 00011888127762 ZANETTI, VALERIA            Mbr Type: Gold Star
          Tax:    11.85                           Resale Total:

FSA/
EBT   Item Description                          Amount    Units  TxFl
E    13574 505 GR CHILI SAUCE 40 OZ              5.55      1   C
E  1242231 SWISS MISS HOT COCOA 50CT             5.99      1   C
          /1242231 2100001963996[10/31/18-11/26/18    2.00-     1-
E   214321 PILLSBURY CRESCENT ROLLS              7.79      1   C
          / 214321 2100001964092[10/31/18-11/26/18    3.40-     1-
E    28185 DLX BAGEL BITES 4/72CT.               8.99      1   C
    990272 GERRY SNOW PANT                       29.99     1   A
   1234400 RECALLED ITEM DO NOT SELL            139.99     1   A
          /1234400 2100001963231[10/31/18-11/26/18    40.00-    1-

          Debit Card #5366                      164.75


*** END OF REPORT ***
```





September 25, 2025

# RECALL NOTICE

Dear Costco Member,

Costco records indicate that you, or one of your add-on members, have purchased one of the
following Oster French Door Countertop Ovens shown below:

| | |
|---|---|
| Item Number 1234400 | Item Number 2234400 |
| (sold between 2018 – 2021) | (sold between 2021 – 2023) |

 

We are informing you that the Sunbeam Company, in cooperation with the U.S. Consumer
Product Safety Commission, is announcing a recall that involves the Oster French Door
Countertop Ovens. When reaching into the hot oven, the oven's doors can unexpectedly close,
posing a burn hazard to consumers.

Please stop using the oven and contact Oster at https://recall.oster.com to verify your model is
affected and register for a free repair kit or return the oven to your local Costco for a full refund.

Should you have any additional questions, please contact Consumer Services at 1-800-334-0759
Monday through Friday (9 a.m. to 5 p.m. ET).

Thank you

Tyler Patterson, VP
The Sunbeam Company and the Oster Brand

EXHIBIT
2